IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

JORGE L. GARIB-BAZAIN,

   Plaintiff,

   v.                             CIVIL NO.

UNITED STATES OF AMERICA,     (Related to Cr. No. 97-091 (11) (JAF).

   Defendant.

_____

PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO THE LEGAL AUTHORITY

FOUND IN TITLE 28, U.S.C. §2255, WITH MEMORANDUM OF LAW

Petitioner;
Jorge L. Garib-Bazain, Pro Se.
E-12 Malaga Street,
Vistamar Marina,
Carolina, Puerto Rico 00983

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

JORGE L. GARIB-BAZAIN,

    Plaintiff,

v.                                    CIVIL NO.

UNITED STATES OF AMERICA,      (Related to Cr. No. 97-091 (11) (JAF).

    Defendant.

---

MEMORANDUM OF LAW IN SUPPORT OF

<u>PETITION FILED UNDER 28 U.S.C. § 2255</u>

COMES NOW plaintiff, Jorge L. Garib-Bazain (hereinafter Garib), Pro Se citing <u>Devine v. Indian River Country School BD</u>. 121 F.3d 576 (11th Cir. 1997), and before this Honorable Court respectfully alleges and prays:

## I. INTRODUCTION

This memorandum of law is filed in support of Garib's petition, filed on this same date pursuant to 28 U.S.C. § 2255, to vacate and set aside the sentence previously imposed upon him in Criminal Case No. 97-091 (11) (JAF) and that he be re-sentenced in light of *Booker v. United States*, 543 U.S. __ , 125 S. Ct. 738, 160 L.Ed.2d 621 (January 12, 2005) and/or *Washington v. Recuenco*, 154 Wash. 2d 156, 110 P.3d 188 (Apr.14, 2005), Supreme Court of the United States, Certiorari No. 05-83 accepted on October 18, 2005. Garib alleges that the Honorable Court incurred in *"plain error"* when it improperly inflicted punishment that the jury's verdict alone did not find all the facts "which the law makes essential to the punishment", said enhancements based on Court's fact

findings violated Garib's Sixth Amendment rights contrary to the dictates of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L. Ed.2d 435 (2000). Accordingly, Garib is entitled to be re-sentenced, based on *Booker* and/or *Washington v. Recuenco*, 154 Wash. 2d 156, 110 P.3d 188 (Apr. 14, 2005); 05-83 United States Supreme Court, Certiorari accepted on October 18, 2005.

## II. FACTUAL BACKGROUND

Garib was convicted of conspiracy to defraud the United States and perjury; he was sentenced on July 11, 2000, to sixty (60) months of imprisonment. His appeal was denied on May 29, 2002 [*Dubon-Otero v. United States*, 292 F.3d 1 (1st Cir. 2002)], his petition of writ of certiorari was denied in *Dubon-Otero v. United States*, 537 U.S. 1171, 123 S. Ct. 993, 154 L. Ed.2d 912 (2003), and began serving his sentence on February 20, 2003.

Based on jury findings beyond a reasonable doubt Garib was convicted of the offenses 18 U.S.C. § 371, Conspiracy to Commit Offense of Defraud the United States, and 18 U.S.C. § 1623, False Declarations Before Grand Jury. The Honorable Court grouped together both counts pursuant to Guideline Section 2 K 1.1 (c), and Guideline Section 2 B 1.1, and determined a base offense level of four (4). See transcript of sentencing hearing at page 68-69 (See Exhibit A).

At the sentencing hearing, the Court, by the preponderance of the evidence, determined the following enhancements:

1)- Monetary loss of $1,231,835.00, making reference to Guideline Section 2 B 1.1 (b) (1) (A) for a thirteen (13) point increase in the offense level. (Tr. at p.68.).

2)- More-than-minimal planning, making reference to Guideline Section 2 B 1.1 (b) (4) (A) for a two (2) point increase in the offense level. (Tr. at p.68.).

3)- Relevant conduct, making reference to Guideline Section 3 B 1.1 (c) for a two (2) point increase in the offense level. (Tr. at p. 68.).

- 3 -

4)- Abuse of position of trust, making reference to Guideline Section 3 B 1.3, for a two (2) point increase in the offense level. (Tr. at p. 69.).

5)- Obstruction of justice, making reference to Guideline Section 3 C 1.1 for a two (2) point increase in the offense level. (Tr. at p.69.).

The court thus found twenty one (21) points of enhancement above the offense level of four (4) points for a total of twenty five (25) points which according to the Federal Sentencing Guidelines entailed a mandatory sentence of 57 to 71 months of imprisonment. The court imposed a sentence of sixty (60) months of imprisonment, the maximum under the Statute; ordered restitution in the sum of eighty eight thousand and seven hundred and fifty four dollars ($88, 754.00); and two (2) years of supervised release. See Tr. at p. 69-70.

Garib argued that in sentencing him, the Court should consider the "words on behalf of such an extraordinary human being". (Tr. at p. 3.) "One of the few doctors who would take care of patients who had this illness [AIDS], due to the ungrounded stigma that this illness has. And that he would even treat them without charging them for their visit." (Tr. at p. 9-10).

These words and letters told of the truly exemplary and committed life Garib led, and about his many, many good deeds. They also detailed how he had spent his entire life helping others. Based on all these letters, and expressed words, Garib moved for a downward departure from the sentencing guidelines.

In response, the Government argued: "Does the fact that Garib has other undeniable qualities, that he's an excellent physician, a dedicated family man, that he has had compassion for his patients in the past, does that make Dr. Garib's conduct any less egregious, Judge? (Tr. at p. 66) But Judge, this is not for those accomplishments that Dr. Garib or any other defendants in that case stands before the Court for sentencing". (Tr. at p.67.).

After considering the arguments and the case law, the Court refused to downwardly depart from the mandatory sentencing guidelines.

## III. ARGUMENT

**I. THE SENTENCING COURT VIOLATES GARIB'S SIXTH AMENDMENT RIGHTS AT THE TIME THAT GARIB'S SENTENCING OCCURRED.**

In the instant case, the only facts found by the jury were that Garib conspired to defraud the United States and made false material statements before the grand jury. There was no fact finding by the jury as to issues such as Garib's role in the offense, abuse of a position of trust, obstruction of the justice, the amount of loss, or whether the crimes were committed by sophisticated means.

In *Washington v. Recuenco, Id.*, Washington Supreme Court relied upon *United States v. Jordan*, 291 F. 3d 1091 (C.A. 9 2002). Said Court held that a Sixth Amendment sentencing error can never be harmless.

Since *Apprendi*, the constitutional doctrine is clear, the jury must have the imposed duty to make "fact findings", and at the time of Garib's sentencing, said determinations are the only punishable facts according to the "mandatory" Federal Sentencing Guidelines. Said doctrine was clarified in both *Booker* and *Recuenco*, Id.

Because *Washington v. Recuenco*, 154 Wash. 2d 156, 110P.3d 188 (2005); *State v. Allen*, 2005 WL 1539186, __ S.E. 2d __ (N.C. 2005); *State v. Hughes*, 154 Wash 2d. 118, 110 P.3d 192 (2005); *Sullivan v. Louisiana*, 508 U.S. 275 (1993) precluded harmless error, and every other circuit rejects the notion ("plain error"), the United States Supreme Court will complete the appropriate review in *Recuenco* to solve this conflict.

This plain error is so obvious and prejudicial that this Court should address it despite the parties' failure to raise a proper objection. See *Davis v. U.S.*, 417 U.S. 333, 94 S. Ct. 2298, 41 L.Ed.2d 109, 119, 125 (1974); Wyoming v. Houghton, 526 U.S. 303, 119 S.Ct. 1302, 143 L. Ed. 2d 417; *U.S. v. Hayman*, 342 U.S. 205 (1952), 96 L. Ed. 232.

Thus, if the *Recuenco* decision is affirmed by the United States Supreme Court, Garib

respectfully submits that he must be re-sentenced from zero (0) to six (6) months of imprisonment, which is the term provided by the "mandatory" Federal Sentencing Guidelines for the offense level of four (4) points at the time of his sentence.

Garib's petition should be kept aside and remedy for correcting erroneous sentence should be expedited after revision and opinion by the United States Supreme Court in *Recuenco's* case.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL MANDATES THAT GARIB BE RESENTECED.

If this Court's analysis concludes that Garib's lawyer failed to object Sixth Amendment violation at the sentencing hearing on July 11, 2000, and it deters Garib's claim under *Apprendi* and *Booker*, it constitutes an ineffective assistance of counsel. In *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 51 L.Ed. 2d 393 (1997), the Supreme Court held that "sentencing is a critical stage of the criminal proceeding at which [defendant] is entitled to the effective assistance of counsel". (See Exhibit A) See *United States v. Jadusingh*, 12 F.3d 1162, 1169-1170 (1st Cir. 1994).

If this Court concludes that Garib's failure to object under *Blakely* to preserve the claim of re-sentence under *Booker*, Garib also claim ineffective assistance of counsel. See letter as of January 18, 2005 consulting the trial lawyer, the appeal lawyer, and a third lawyer was copied. (See Exhibit B). Not one out of the three had any idea on how to proceed with regard to *Apprendi*, *Blakely*, and *Booker* in applying it to Garib's situation.

Garib fulfilled the two prong requirements to comply with the standard to prove ineffective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court held that the touchstone for any ineffective assistance of counsel claim is the two-part test laid down:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the

> defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Accordingly, Garib respectfully submits that *Apprendi's* constitutional doctrine, clarified in Booker must be applied retroactively and he must be re-sentenced, even if the Supreme Court of the United States revokes *Recuenco*.

### III. THE SENTENCING COURT'S REFUSAL TO CONSIDER FACTORS OTHER THAN GUIDELINES VIOLATED THE LAW PREVAILING AT THE TIME THAT GARIB'S SENTENCING OCCURRED.

Even though no *Apprendi* objection was raised in Garib's sentencing hearing, Rule 52 (b) of the Federal Rules of Criminal Procedure allows plain errors affecting substantial rights to be noticed even without objection. In *Johnson v. United States*, 520 U.S. 461, 117 S. Ct. 1544, 137 L. Ed.2d 718 (1997) the Court says:

> Rule 52 (b) of the Federal Rules of Criminal Procedure provides that plain errors affecting substantial rights may be noticed although they were not brought to the attention of the court.

A defendant's failure to raise a claim of error on direct appeal is not fatal to habeas petition if the defendant demonstrates both cause excusing his procedural default and actual prejudice resulting from the claim of error. *United States v. Skudral*, 341 F.3d 921, 925 (9th Cir. 2003); *Oakes v. United States*, 400 F.3d 92, 95 (1st Cir. 2005) (procedural default of failure to raise an issue on direct appeal is not bar to federal habeas relief if petitioner can show that there is a cause for the default and actual prejudice resulting from it). In *Reed v. Ross*, 468 U.S. 1, 16, 104 S. Ct. 2901, 82 L. Ed.2d 1 (1984), the Supreme Court held that "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim" on appeal. Thus, when an "intervening [legal] decision represents a clear break with the prior universally

accepted interpretation of the law, a petitioner has cause for failing to raise a claim at trail or on direct appeal." *United States v. Wiley*, 922 F. Supp. 1405, 1411 (D. Minn. 1996).

By the date on which Garib filed his appeal the first, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, and eleventh circuits- every single appellate court which had considered the issue-had rejected the argument that *Apprendi* applied to all sentencing factors. [1] Indeed, by the date on which Garib filed his appeal, there were two hundred and seventy three (273) decisions in which *Apprendi* was cited by one of the Courts of Appeals. Not one of those decisions upheld a favorable decision for explicitly rejecting the argument that *Apprendi* applied where the facts merely determined where within the statutory range the defendant would be sentenced. [2]

Since the first circuit and every other circuit court had rejected the argument, it clearly would have been an exercise in futility for Garib to have argued at sentencing or direct appeal that his sentence was unconstitutional pursuant to the holding in *Apprendi*. This argument was not a viable legal argument until the Supreme Court's decision in *Booker*. Respondent cannot argue that the law requires Garib to have made this argument on appeal even though it clearly would have been rejected out of hand.

This is not the law. To the contrary, the Supreme Court has recognized that when the law is settled in one way, petitioner's failure to make an argument on appeal which contradicts the clearly settled law constitutes "cause".

Thus, in *Reed*, citing *Ross v. Reed*, 704 F.2d 708 (4th Cir. 1983) the Supreme Court quoted with approval the opinion of the Court of Appeals explaining why it would be irrational for the law

---

[1] *United States v. Baltas*, 236 F.3d 27 (2001); *United States v. Williams*, 235 F.3d 858 (3rd Cir. 2000); *United States v. Lewis*, 235 F.3d 215 (4th Cir. 2000); *United States v. Salazar-Flores*, 238 F.3d 672 (5th Cir. 2001); *United States v. Munoz*, 233 F.3d 410 (6th Cir. 2000); *United States v. Williams*, 238 F.3d 871 (7th Cir. 2001); *United States v. Aguayo-Delgado*, 220 F.3d 926 (8th Cir. 2000); *United States v. Garcia-Sanchez*, 238 F.3d 1200 (9th Cir. 2000); *United States v. Keeling*, 235 F.3d 533 (10th Cir. 2000); *United States v. Gerrow*, 232 F.3d 831 (11th Cir. 2000).
[2] *United States v. Houle*, 237 F.3d 71 (1st Cir. 2000); *United States v. Simonelli*, 237 F.3d 19 (1st Cir. 2001); *United States v. Baltas*, 236 F.3d 27 (1st Cir. 2001); *United States v. La Freniere*, 236 F.3d 41 (1st Cir. 2001).

- 8 -

to classify as a procedural default a defendant's failure to raise on appeal a constitutional argument which had repeatedly been rejected by the appellate courts:

> If novelty were never cause, counsel on appeal would be obligated to raise and argue every conceivable constitutional claim, no matter how far fetched, in order to preserve a right for post-conviction relief upon some courts are already overburdened with meritless and frivolous cases and contentions, and an effective appellate lawyer does not dilute meritorious claims with frivolous ones. Lawyers representing appellants should be encouraged to limit their contentions on appeal at least to those which may be legitimately regarded as debatable.

Garib clearly, thus, had cause for failing to raise his *Apprendi* claim on direct appeal. Furthermore, on July 20, 2000, nine (9) days after Garib's sentencing, his codefendant Dubon-Otero raised the *Apprendi* objection and the Court rejected the prevailing law and proceeded to sentence him using "mandatory" sentencing guidelines with inherent enhancements determined by the court by the preponderance of the evidence. This claim had repeatedly been rejected by the appellate courts, and at the time would have been a meritless, frivolous, and futile contention. It was not until *Booker* was decided by the Supreme Court that Garib's constitutional right accrued to be effectually claimed and enforced, with merit.

Garib has thus established both cause for his failure to raise the *Apprendi* issue on sentencing and appeal, and prejudice from the Court's failure to apply *Apprendi* to Garib's sentencing.

In *Mackey v. United States*, 401 U.S. 667, 91 S. Ct. 1160, 28 L.Ed. 2d 404 (1971) (dissent) Justice Harlan explained that "in adjudicating habeas petitions [the Court should] generally ... apply the law prevailing at the time a conviction became final... ." Justice Harlan's view was adopted by the entire Supreme Court in *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 104 L. Ed. 2d 334 (1989), and remains the law to this day. Thus, in determining Garib's habeas petition, this Honorable Court must look first to the law which existed at the time Garib was sentenced.

*Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), was decided two (2) weeks prior to Garib's sentencing. *Apprendi* held that other than the fact of prior

conviction, any fact that mandated an increase penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. Id. At 2363-4. As the Supreme Court noted in *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 2537, 159 L. Ed. 2d 403 (2004) (internal citations omitted), explaining *Apprendi*:

> The relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

At the time of Garib's sentencing, the only constitutionally mandatory sentence was one based on facts found beyond a reasonable doubt by a jury, or admitted by the defendant. The Guidelines, which established a mandatory sentencing structure, therefore were unconstitutional to the extent that they did not rest upon findings of fact by a jury or admissions by a defendant.

In the instant case, the only facts found by the jury were that Garib conspired to defraud the United States and false material statements before a grand jury. There was no fact finding by the jury as to the issues such as Garib's role in the offense, abuse of a position of trust, obstruction of justice, the amount of loss, or whether this crime was committed by sophisticated means. As a consequence, the "statutory maximum", as the term was explained in *Blakely v. Washington*, i.e., the maximum the Judge may impose without any additional finding, was the base offense level for fraud and perjury that the Court grouped together, or four (4) points. In other words, the only mandatory sentence which constitutionally could be imposed upon Garib was a sentence of zero (0) to six (6) months of imprisonment (corresponding to the Guideline level of 4). The *Recuenco* court's decision rested wholly on its belief that *Sullivan v. Louisiana*, 528 U.S. 275 (1993) precluded harmless error analysis for Sixth Amendment sentencing error. Garib's Sixth Amendment right to a jury verdict was violated when the judge, not the jury, made determinations regarding "monetary loss", "more than minimal planning", "relevant conduct", and "abuse of a position of trust". Said judge

determinations enhanced substantially Garib's sentence. According to *State v. Hughes*, 154 Wash. 2d 118, 110 p.3d 192 (2005) the court held that the Blakely-type error was a structural error, equivalent to the error in Sullivan and applied by the court in *Recuenco*.

The sentencing court in the instant case, however, ignored the prevailing case law, *Apprendi*, and instead continued to hold that the guidelines, including guideline enhancements **never considered by the jury, were mandatory**. Acting on this understanding of the law, the sentencing court (1) found by a preponderance of evidence that Garib's total offense level was 25[2] and (2) held that the level of 25[3] were **mandatory** because the law **did not permit** the court to consider the facts set forth in Garib's sentencing memorandum.

This was an error. As explained in Booker, the Guidelines are just **one** of the factors to be considered by the sentencing court. The sentencing court was **required** to weigh **all** factors set forth in 18 U.S.C. § 3553, specifically including "the history and characteristics of defendant."

Justice Stevens concluded the merits majority opinion in Booker[4] by writing, "accordingly, we reaffirm our holding in *Apprendi*: Any fact (other than a prior conviction) which is necessary to support a [mandatory] sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Booker, Id. Supra at p. 756. Likewise, Justice Breyer at the very beginning of the remedial majority opinion wrote that the Court was "applying its decisions in *Apprendi*... and *Blakely*... to the Federal Sentencing Guidelines." Id.

Thus, the *Booker* decision was explicitly based on *Apprendi*. Because the sentencing court erroneously failed to apply prevailing *Apprendi* law, Garib respectfully submits that he must be

---

[2] Garib's Guidelines were calculated as previously detailed at page 2 and 3.
[3] It is not clear from the transcript whether the sentencing court found that a downward departure on this basis was not permissible or that Garib's good deeds were not so extraordinary so as to qualify for a downward departure. The reason for the court's findings is not significant for the purpose of this motion since it is clear from the record that the sentencing court found that the Guidelines were mandatory and therefore the other factors mentioned in § 3553 were not relevant to sentencing.
[4] There were two majority opinions in *Booker* – the merits of majority opinion authored by Justice Stevens, which held that the Federal Sentencing Guidelines were unconstitutional, and the remedial majority opinion, authored by Justice Breyer, which held that the remedy was to strike the portion of the sentencing law which made the Guidelines mandatory.

resentenced, and the at re-sentencing this Honorable Court must consider all the factors set forth in 18 U.S.C. § 3553.

## IV. BOOKER SHOULD BE APPLIED RETROACTIVELY.

As described in point I, the law at the time that Garib was sentenced was that the Guidelines **could not constitutionally mandate** a sentence based on facts found by a preponderance of evidence by the sentencing court. However, if this court disagrees with this analysis and finds instead that *Booker* announced a new principle of law, then it is respectfully submitted that *Booker* announced a "watershed rule of criminal procedure" and is accordingly retroactive. See *Teague v. Lane*, 489 U.S. 288, 311, 109 S. Ct. 1060, 104 L. Ed. 2d 206 (1989).

*Teague* explained that when the Supreme Court announces a new rule of criminal procedure, that rule generally is not retroactive unless it is a watershed rule of criminal procedure which implicates the fundamental fairness and accuracy of criminal proceeding. *Saffle v. Parks*, 494 U.S. 484, 110 S. Ct. 1257, 109 L.Ed. 2d 322 (1990). The *Teague* test has two criteria (1) the rule must be new; (2) the rule implicates "fundamental fairness and accuracy of the criminal proceeding." Id. At 494-495.

Here, if this honorable court rejects Garib's argument in Point I above "that *Booker* was mandated by *Apprendi* and therefore was the law at the time of Garib's sentencing". It will have *per force* found that the rule announced in *Booker* was not the law at the time Garib was sentenced. Therefore, the first prong of the *Teague* test is met. i.e., *Booker* announced a new rule of criminal procedure.

With respect to the second prong of the *Teague* test, the *Booker* opinion is clear that the decision was based on questions of fundamental fairness and accuracy of the criminal proceedings – specifically, accuracy of the sentencing proceedings. Thus, the Supreme Court explained that the finding that the Guidelines are unconstitutional was "not motivated by the Sixth Amendment

substance". Id. Supra 125 S. Ct. at p. 752. The Supreme Court instructed that principles underlying the decision in *Booker*:

> [A]re not the product of recent innovations in our jurisprudence, but rather have their genesis in the ideals our constitutional tradition assimilates from the common law. ...the Framers of the Constitution understood that the threat of the judicial despotism that could arise from arbitrary punishments upon arbitrary convictions without the benefit of a jury in criminal cases. ...the Founders presumably carried this concern from England, in which the right to the jury trial has been enshrined since the Magna Carta. As we noted in *Apprendi*: "the historical foundation for our recognition of these principles extends centuries into the common law. 'To guard against a spirit of oppression and tyranny on the party of rulers,' and 'as the great bulwark of our civil and political liberties,' trial by jury has been understood to require that 'the truth of every accusation, whether preferred in the shape of indigtment, information, or appeal, should afterwards be confirmed by the unanimous suffrage of twelve of the defendants equals and neighbors...'. Id. 530 U.S. at p.477, 120 S. Ct. at p. 2348 (internal citations omitted)."

125 S. Ct., at p. 753.

In other words, *Booker* is based on the fundamental principle which underlies our criminal justice system- that to ensure that a person is not unjustly punished, all facts essential to a mandatory sentence must be proved to a jury **beyond a reasonable doubt.** **Before** *Booker*, mandatory sentences were imposed based on facts found by a **preponderance of evidence** by a sentencing court. **After** Booker, mandatory sentences cannot be imposed unless the facts upon which those sentences are based are proven **beyond a reasonable doubt** to a jury.

The question decided in *Booker* thus concerns not just who is the proper fact finder- it also concerns the proper burden of proof. The Supreme Court has ruled that decisions finding that a higher burden of proof in a criminal case is constitutionally required **must** be applied retroactively since these decisions concern a procedure essential to accurate fact finding. Thus, for example, in *Matter of Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970), the Supreme Court overturned a conviction of a juvenile, holding that juveniles, like adults, are constitutionally entitled to proof beyond a reasonable doubt when they are charged with a violation of a criminal law. In

*Ivan V. v. City of New York*, 407 U.S. 203, 92 S. Ct. 1951, 32 L. Ed. 2d 659 (1972) the Supreme Court explained that:

> Where the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect.

So too in *Hankerson v. North Carolina*, 432 U.S. 233, 97 S. Ct. 2339, 53 L. Ed. 2d 306 (1977) did the Supreme Court hold that its decision in *Mallaney v. Wilbur*, 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975) (requiring the State to establish all elements of a criminal offense beyond a reasonable doubt, and invalidating burden-shifting presumptions to defendants) must be given retroactive application. In *Hankerson* the Supreme Court instructed that the requirement that the States "apply the reasonable doubt standard of proof rather than some lesser standard under which an accused would be more easily lose his liberty" was "designated to diminish the probability that an innocent person would be convicted" and thus to overcome an aspect of a criminal trial that "substantially impairs the truth-finding function." 432 U.S. 242.

While the Supreme Court has not yet explicitly considered the issue of the retroactivity of *Booker,* in *Cirilo-Munoz v. United States*, 404 F.3d 527, (1st Cir. 2005), the First Circuit stated, in dicta, that *Booker* should not be applied retroactively in that case. This is in accordance with every Circuit that has considered this question. See, *United States v. Mitchell*,   F. 3d    (2d Cir. 2005); *Huphress v. United States*, 398 F. 3d 855 (6th Cir. 2005); *McReynolds v. United States*, 397 F. 3d 479 (7th Cir. 2005); *Varela v. United States*, 400 F. 3d 864 (11th Cir. 2005).

Nonetheless, *Cirilo-Munoz* is not controlling for two critical reasons. First, the issue raised here by Garib is different than the issue in *Cirilo-Munoz*, or in *Mitchell, Huphress, McReynolds*, or *Varela*. As explained above, *Booker* is retroactive here because *Booker* changed the burden at sentencing. In the above cited cases, none of the courts considered that issue. First circuit held only that "the use of judge-made findings at the sentencing does not undermine "accuracy" (in terms of

- 14 -

substantially different outcomes) or "undermine fundamental fairness". *Cirilo-Munoz*, Supra, at p.5. is an entirely different issue than the one raised by Garib in the instant case. Second, the holding in *Cirilo-Munoz* that *Booker* could not be applied in that case was clearly dicta. The decision by the court of appeals in *Cirilo-Munoz* to order the case remanded for the re-sentencing was based squarely on ineffective assistance of counsel. Thus, the *Cirilo-Munoz* court neither reached nor decided *Booker's* retroactivity.

Nor thus *Shriro v. Summerlin*, 124 S. Ct. 2519 (2004), in which the Supreme Court held that *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), was not retroactive, mandate a finding here that *Booker* is not retroactive. In *Shriro* the Supreme Court specifically noted that the Arizona law held unconstitutional in *Ring* already required aggravating factors to be proved beyond a reasonable doubt, therefore, that aspect of *Apprendi* was not at issue. Id., Supra 536 U.S. 584 at n.1. Thus, *Shriro* held that *Ring* was not retroactive because it simply changed the decision maker from the judge to the jury. *Ring* did not, however, change the burden of proof and, therefore, *Shriro* did not address the question of whether a case that would change the burden of proof with respect to imposition of mandatory sentence was retroactive.

More recently, in *United States v. Fornia-Castillo*, 408 F. 3d 52 (1st Cir. May 27, 2005) citing *United States v. Antonakopoulos*, 399 F. 3d at 75 (1st Cir. 2005). The court says:

> *Booker* error is established whenever 'a defendant's Guideline sentence was imposed under a mandatory Guideline system', whether or not the sentencing court relied on a judicial fact finding to increase the sentence beyond the maximum authorized to jury found or admitted facts.

In *United States v. Alvarez-Cuevas*, 415 F. 3d 121 (D. Puerto Rico, June 30, 2005), the court says:

> When *Booker* claims are made, the first two prongs of plain error analysis are satisfied: there was error and it was plain... [W]e have recognized that an error in interpretation or application of Guidelines may suffice to warrant a *Booker* remand.

- 15 -

In *United States v. Pedro Pacheco*, 138 Fed. Appx. 331 (D. Puerto Rico, 1st Cir. July 1, 2005) (per curiam) the court says:

> "We need not tarry. The appellant argues, in substance, that his case should be remanded for resentencing because the district court sentenced him under a mandatory guidelines system. We agree that such error occurred".

This constitutional right, while founded on *Apprendi*, was not recognized by the Supreme Court to apply to sentencing guidelines until the *Booker* decision.

In *Dodd v. United States*, 125 S. Ct. 2478 (June 20, 2005), the Supreme Court held that one year limitation period for filing a motion to vacate based on a right that was newly recognized by the Supreme Court runs from the date on which the Supreme Court initially recognized the right asserted. Accordingly, the one year period in the anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA") during which Garib must file a habeas claim began to run as of the date of the decision of Booker, which was decided on January 12,, 2005.

Accordingly, we respectfully submit that *Booker* must be applied retroactively and Garib must be re-sentenced.

## IV. THE DUE PROCESS CLAUSE PROHIBITS A SENTENCE ABOVE THE BASE OFFENSE LEVEL IN THIS CASE.

There is no doubt that the remedial majority's opinion in *Booker* is applicable to all defendants who offend after January 12, 2005, which is the date the Supreme Court decided *Booker* and put the public on notice of the punishment associated with breaking federal laws. However, even defendants who committed offenses prior to *Booker* cannot be sentenced to more than the "statutory maximum" as defined in *Apprendi*.

As already demonstrated, ante, in *Apprendi*, the Supreme Court held that a defendant has a constitutional right to have a jury find beyond a reasonable doubt the facts which are the basis for the

imposition of a mandatory sentence. Thus, under *Apprendi*, plaintiff herein could only be sentenced to a term of from zero (0) to six (6) months of imprisonment.

*Booker* cannot constitutionally be applied retroactively so as to increase Garib's possible sentence. The Supreme Court has made clear "that limitations on ex post facto judicial decision making are inherent in the motion of due process." *Rogers v. Tennessee*, 532 U.S. 451, 121 S. Ct. 1693, 149 L. Ed. 2d 697 (2001). As the *Rogers* court explained:

> If a judicial construction is "unexpected and indefensible by the reference to a law which has been expressed prior to the conduct in issue." citing *Bouie v. City of Columbia*, 378 U.S. 347, 84 S. Ct. 1697, 12 L. Ed. 2d 894 (1964), [the construction] must not be given retroactive effect.

532 U.S., at 457.

These Constitutional Due Process and *ex post facto* principles apply here because the remedial majority in *Booker*, through its new interpretation of the *Sentencing Reform Act*, effectively **increased** the statutory maximum penalty that may be imposed for federal crimes. *Blakely v. Washington*, 124 S. Ct. 2537 (2004), explained that "'the statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Booker*, 125 S. Ct. at 749 (quoting *Blakely*, 124 S. Ct., at 2537). Thus, under the mandatory federal guidelines system that was in effect until *Booker* was decided, the "statutory maximum" sentence was at the top of the sentencing guideline range, as calculated **solely** on the basis of facts (other than a prior conviction) found by the jury beyond a reasonable doubt or admitted by the defendant.

Accordingly, at the time that Garib was sentenced, the guidelines were mandatory and, pursuant to *Apprendi*, the maximum sentence which could be imposed was a sentence based on facts found beyond a reasonable doubt by the jury, or admitted by the defendant. The only fact relevant to the Guidelines which were found by the jury here is that Garib conspired to commit fraud and perjury, and this court grouped together. Therefore, under the Guidelines, the "statutory maximum" sentence, as defined by *Apprendi*, was six (6) months of imprisonment.

The remedial majority in *Booker*, by judicially striking out the provision that had - made the guidelines mandatory, effectively raised the statutory maximum from the top of the un-enhanced guideline range to the maximum allowed under the statute for the offense at issue. Using the instant case again as an example, the maximum sentence which can now be imposed is five years – the sentence which was in fact imposed on Garib.

The *Booker* interpretation of the *Sentencing Reform Act* clearly expands the criminal penalty for all federal crimes to the detriment of defendants in cases involving crimes committed before *Booker*, as is the case with Garib.

Thus, the *Booker* Court's remedial interpretation of § 3553 meets the *Rogers* two-part test for non-retroactivity because it was (1) unexpected, and (2) "indefensible by reference of law which had been expressed prior to the conduct in issue." *Id.*, at 457.

First, the remedy imposed by *Booker* was clearly unexpected.[5] Indeed, the Supreme Court instead had previously interpreted the Guidelines as mandatory. See, *Stinson v. United States*, 508 U.S. 36, 42, 113 S. Ct. 1913, 123 L. Ed.2d 598 (1993) (reaffirming the "binding" nature of the Guidelines and citing prior cases). Justice Scalia's dissent in *Booker* notes that Congress "expected" the Guidelines to be mandatory. 125 S. Ct., at 758 (Scalia, J. dissenting). Justice Stevens further emphasized the entirely unexpected nature of the Court's remedy, stating that "the novelty of this remedial maneuver perhaps explains why no party or amicus curiae to this litigation has requested the remedy the Court now orders." 125 S. Ct., at 777 (Stevens, J. dissenting) (emphasis in the original).

It is equally clear that the remedial construction of § 3353 was "indefensible by reference to the law which had been expressed prior to the conflict in issue." The point is made clear by the fact that the remedial majority could not cite a single prior decision to support its construction of the statute. Moreover, as Justice Stevens observed in his dissent, nothing in *Booker* even suggests that there is "any constitutional infirmity inherent in Section 3553 (b) (1). *Id.* 125 S. Ct., at 771 (Stevens,

J. dissenting). Thus, there was nothing in prior law that the Court could rely upon to support its construction/ excision of §3553 (b)(1), therefore it was "indefensible" by reference to prior law.

Clearly, both prongs of the *Rogers* test are met, and the *Booker* remedy cannot be applied retroactively to the detriment of Garib herein who committed his offense before *Booker* was decided. Accordingly, Garib must be re-sentenced to the "statutory maximum" for his offense – a Guideline offense level of four (4), with a corresponding sentence from zero (0) to six (6) months of imprisonment.

## V. BOOKER AND RECUENCO PRECLUDE ANY RESTITUTION ORDER EXCEPT FOR AN AMOUNT CHARGED AND FOUND BY A JURY OR ADMITTED BY THE DEFENDANT.

Under *Apprendi* and *Booker*, restitution can be imposed only for the amount that has been proven to the jury beyond a reasonable doubt or admitted by the defendant. In 2002, the Third Circuit ruled that for purposes of analysis under *Apprendi*, restitution constituted "the penalty for a crime." *United States v. Syme*, 276 F. 3d 131, 159 (3rd Cir. 2002). The Court also ruled, however, that *Apprendi* does not apply to restitution orders because there is no statutory maximum. *Id.* That ruling has now been undermined by the Supreme Court's decision in *Blakely* and *Booker*, which make clear that " 'the statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Booker*, 125 S. Ct., at 749.

Thus, the "statutory maximum" restitution that may be imposed on a defendant depends on the amount of loss proven to the jury at trial or admitted by the defendant. Since the jury here did not make any finding regarding the amount of loss in the case and Garib did not admit to any such amount, following the reasoning of *Apprendi*, *Blakely*, and *Booker*, no amount of restitution may be imposed.

WHEREFORE, for the reasons set forth above, Garib respectfully requests that this Honorable Court grant Garib's petition, vacate the sentence previously imposed in this case and proceed with re-sentencing according to law.

_____
Jorge L. Garib-Bazain, Pro Se,
Reg. No. 17836-069
E-12 Malaga Street,
Vistamar Marina,
Carolina, Puerto Rico 00983